FILED

07/28/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0296

DA 25-0296

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 165

STATE OF MONTANA,

       Petitioner and Appellee,

  v.

THOMAS WILSON as the Personal Representative
of the ESTATE OF HALEY WILSON; and
THOMAS WILSON as the conservator of Minor
Child J.M.W.,

       Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV-2024-338
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Adam Cook, Everett Cook Law, Anaconda, Montana

              Justin P. Stalpes, Conner C. Bottomly, Beck, Amsden & Stalpes, PLLC,
Bozeman, Montana

       For Appellee:

              Dale R. Cockrell, Eric M. Brooks, Moore, Cockrell, Goicoechea &
Johnson, P.C., Kalispell, Montana

                Submitted on Briefs:  February 18, 2026
                        Decided:  July 28, 2026

Filed:

                        _____
                                  Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Respondent and Appellant Thomas Wilson, as both Personal Representative of the Estate of Haley Wilson and as the Conservator of Minor Child J.M.W., appeals from the March 25, 2025 Order – Motion for Summary Judgment issued by the First Judicial District Court, Lewis and Clark County. The District Court's Order granted the State of Montana's motion for summary judgment, authorized the State to deposit $750,000 into the court's registry, discharged both the State and Jose Angel Sanchez Ruiz from any and all further liability to Thomas Wilson, as both Personal Representative of the Estate of Haley Wilson and as the Conservator of Minor Child J.M.W., and dismissed the State from the interpleader action with prejudice. The State deposited $750,000 into the District Court's registry on April 11, 2025, and the court entered its Final Judgment that same day.

¶2 We address the following issues on appeal:

1. *Did the District Court err by allowing the State to proceed in interpleader?*

2. *Should this Court issue an opinion regarding the constitutionality of the statutory damages cap imposed by § 2-9-108, MCA, under the procedural posture of this case?*

¶3 Finding the State's action in interpleader to be improperly filed and, accordingly, any discussion by this Court regarding the constitutionality of the damages cap rendered speculative and advisory, we reverse the District Court's grant of summary judgment in favor of the State and remand for an order dismissing this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On September 13, 2023, Haley Wilson was involved in an automobile accident when a state-owned vehicle driven by Jose Ruiz, who was working for Montana State

2

University and acting within the course and scope of his employment with the State, crossed the I-90 median and collided with her vehicle. Both Haley and Ruiz were killed in the accident. At the time she was killed, Haley was the mother to a 2-year-old daughter, J.M.W., who was not in the vehicle with her at the time of the accident.

¶5 Because Ruiz was a state employee acting within the course and scope of his employment at the time of the crash, Thomas presented claims to the State.[1] As personal representative of Haley's estate, Thomas presented claims for survivorship and wrongful death. As conservator of J.M.W., Thomas presented a claim for negligent infliction of emotional distress. The State offered Thomas $750,000 for a release and settlement of all claims against the State and Ruiz, which Thomas rejected.

¶6 After its pre-litigation offer to settle was rejected and prior to Thomas filing any tort action on behalf of either the Estate or J.M.W., the State filed its Petition in Interpleader and Complaint for Declaratory Relief on May 16, 2024. The State's petition did not specifically mention either M. R. Civ. P. 22, which provides for interpleader, or Montana's Uniform Declaratory Judgments Act (UDJA), §§ 27-8-101 to -313, MCA. The State's

[1] Section 2-9-301, MCA, provides that all claims against the State must be presented in writing to the Department of Administration and that a complaint based upon those claims may not be filed in district court until the Department has finally denied the claim. Section 2-9-301(1)-(2), MCA. The Department of Administration must grant or deny the claim in writing within 120 days after the claim is presented and the failure of the Department to make a final disposition regarding the claim within 120 days is "considered a final denial of the claim[.]" Section 2-9-301(2), MCA. Beyond stating that Thomas presented claims to the State, the record is silent regarding how this procedure played out in this case. The record does not reflect whether the Department made any written final disposition regarding the claims or whether the State's petition in interpleader was filed within or following the conclusion of this 120-day period. Thomas's appellate briefing does assert the State's petition was filed "[b]efore the statutory period for Wilson's administrative claims had run[.]"

3

petition did assert that the "Estate's and the Minor Child's claims are one claim under Mont. Code Ann. § 2-9-101(1)," and "[g]iven the State's position" that Thomas's claims on behalf of the Estate and J.M.W. are one claim the State "is not responsible for an amount in excess of $750,000" pursuant to § 2-9-108(1), MCA. In its prayer for relief, the State asked for (1) "an order authorizing and directing Petitioner to pay $750,000.00 into the Court registry"; (2) "an order that upon payment of the $750,000.00 into the Court registry, Petitioner and Mr. Ruiz are discharged from any and all further liability to Respondent"; (3) "an order that upon payment of the $750,000.00 into the Court registry, Petitioner be dismissed with prejudice from this action"; and (4) "an order granting such and further relief to the State as may be proper." Thomas filed an Answer on June 10, 2024, and a First Amended Answer on September 11, 2024. In his First Amended Answer, Thomas asserted a constitutional challenge to the $750,000 "per claim" limitation on damages found in the Tort Claims Act, §§ 2-9-108 and -101, MCA.

¶7 On July 29, 2024, Thomas served his First Combined Discovery Requests on the State. Those discovery requests sought, among other things, copies of any and all insurance policies covering the pickup driven by Ruiz during the accident, information regarding the State's self-insurance fund, and information regarding cases within the last five years where the State settled claims above the $750,000 per claim limit. Thomas also requested admissions that the losses suffered were severe and profound, and were likely to exceed the Tort Claims Act cap amounts.[2] The State filed both a motion for summary judgment

---

[2] Other discovery requests related to the governmental interest of the tort claim cap and the relationship between the claims asserted by J.M.W. and those of Haley's Estate.

4

and a motion to stay discovery on September 27, 2024.  In its summary judgment motion, the State asserted it was entitled to an order allowing it to deposit $750,000 into the court registry, discharging it from any and all further liability, and dismissing it from the case with prejudice.  In its motion to stay discovery, the State asserted the discovery requests would be moot if its summary judgment motion was granted, so staying discovery would serve the ends of justice by conserving the parties' resources.  Thomas filed responses opposing both motions, and the State filed reply briefs.

¶8    On January 14, 2025, the District Court granted the motion to stay discovery because the motion for summary judgment had been fully briefed.[3]  On February 27, 2025, the District Court held oral argument on the State's motion.  Much of the presentation from both parties centered around arguments regarding the constitutionality of the statutory tort cap of § 2-9-108, MCA.  Counsel for the State repeatedly argued the State could only interplead the $750,000 if the District Court also granted its release from any and all further liability and closed by noting the State was only agreeing to interplead the funds "for purposes of resolving this issue" and "[i]f the State is not going to get a release, it very well

---

[3] Thomas did not file a motion pursuant to M. R. Civ. P. 56(f), which allows a district court to, among other things, order a continuance to "enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken" when a party opposing summary judgment shows it cannot present facts essential to justify its opposition.  M. R. Civ. P. 56(f)(2).  Thomas did file a response opposing the State's motion to stay discovery, which asserted the discovery responses were "reasonable and relevant" to the State's summary judgment motion.  Thomas's response in opposition to the motion to stay discovery noted evidence of the State carrying an insurance policy which agreed to provide coverage in excess of the statutory cap would constitute a waiver of immunity under the tort cap and that the State had not answered his requests for production regarding insurance policy information related to the crash.  Rather than file a Rule 56(f) motion to seek this information, Thomas responded in opposition to the State's summary judgment motion without ever finding out if the State did in fact carry any insurance which could operate to waive its immunity under the tort cap.

may challenge what happened in this accident."  On March 25, 2025, the District Court issued its order granting the State's motion for summary judgment.  The court determined the claims of Haley's Estate and that of J.M.W. were one "claim" as defined by § 2-9-101, MCA, and that the $750,000 per claim tort cap of § 2-9-108, MCA, was both facially constitutional and constitutional as applied to the claims presented by Thomas in this case. The court further noted Thomas failed to file an M. R. Civ. P. 56(f) motion to seek evidence of an excess insurance policy after the State sought a protective order staying discovery and did not respond to Thomas's requests for production regarding any potential insurance policy which could operate to waive the statutory tort cap under *Daniels v. Gallatin Cnty.*, 2022 MT 137, 409 Mont. 220, 513 P.3d 514.  The District Court entered an order which authorized the State to deposit $750,000 into the court registry, discharged the State and Ruiz from any and all further liability to Thomas, as both Personal Representative of Haley's Estate and as Conservator of J.M.W., and dismissed the State with prejudice upon deposit of the $750,000.  After the State deposited the money into the court's registry, the District Court entered its Final Judgment on April 11, 2025.

¶9      Thomas appeals.  Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶10     We review summary judgment rulings de novo, applying the same M. R. Civ. P. 56 criteria as the district court.  *Watterud v. Gilbraith*, 2015 MT 288, ¶ 10, 381 Mont. 218, 358 P.3d 891.  Summary judgment is appropriate when the moving party has established both the absence of any genuine issue of material fact and entitlement to judgment as a matter of law.  *Watterud*, ¶ 10.

6

¶11 We review a district court's interpretation of law pertaining to a declaratory judgment ruling for correctness. *Med. Marijuana Growers Ass'n v. Corrigan*, 2012 MT 146, ¶ 14, 365 Mont. 346, 281 P.3d 210. A district court's ruling on whether a justiciable controversy exists is a conclusion of law that we review for correctness. *Arnone v. City of Bozeman*, 2016 MT 184, ¶ 4, 384 Mont. 250, 376 P.3d 786.

## DISCUSSION

¶12 This matter comes before the Court in a unique procedural posture, which must first be disentangled to allow us to reach the issues presented. Thomas, as both Personal Representative of Haley's Estate and as Conservator of J.M.W., has not filed a lawsuit against the State in either capacity. As previously noted, we must simply presume Thomas presented the claims of the Estate and of J.M.W. in accordance with the requirements of § 2-9-301, MCA, because the record is silent as to the required process of presenting claims to the Department of Administration. The record is also silent as to where that mandatory process was when the State filed its petition seeking interpleader and a release from any and all liability to Haley's Estate and J.M.W., whether the State denied the claims in writing as required by statute, or whether the State's petition was filed prior to or following the conclusion of the statute's 120-day limit for approval or denial of a submitted claim.[4] We are also faced with a petition for interpleader and request for declaratory judgment which mentions neither the rule permitting interpleader in this state nor the declaratory judgment statute.

---

[4] Though not reflected in the record, Thomas's appellate briefing does assert the State's petition was in fact filed "[b]efore the statutory period" for his administrative claims had run.

¶13 After the parties completed their appellate briefing in this case—entirely focused on the constitutionality of the tort cap and whether J.M.W. presented an independent and non-derivative personal injury claim from that of Haley's Estate—we requested supplemental briefing on the following questions:

> 1. Is the State's action for declaratory judgment and interpleader proper under M. R. Civ. P. 22?
>
> 2. Is it appropriate for this Court to issue an opinion in an interpleader action on the constitutionality of the damages cap imposed by § 2-9-108, MCA, when there has been no plaintiff's lawsuit filed and no determination of the State's liability for damages exceeding the statutory limit?

The parties filed the requested supplemental briefs. Thomas asserts the State's action for interpleader is improper because the State is not a disinterested stakeholder but the alleged tortfeasor, but that it remains appropriate to reach the constitutional issue regarding the statutory damages cap. The State asserts its interpleader petition is proper because it was not required to wait for Thomas to file a lawsuit and that there is a justiciable controversy regarding the constitutionality of the cap because the State has "requested and been refused a release of claims despite its willingness to pay the maximum amount of its potential liability under the Tort Claims Act."

¶14 *1. Did the District Court err by allowing the State to proceed in interpleader?*

¶15 We must first determine whether this entire proceeding has been prosecuted in error by allowing the State to proceed in interpleader. Interpleader "has been in existence for over 600 years," first originating in the English common-law courts in the early 1300s and functioning as "an affirmative remedy to be used against multiple claimants seeking relief upon a single obligation." 7 Charles Alan Wright et al., *Federal Practice and Procedure*

8

§ 1701 (3d ed. 2026). "Interpleader is an action rooted in equity, and a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund." *Associated Dermatology & Skin Cancer Clinic v. Fitte*, 2016 MT 349, ¶ 13, 386 Mont. 150, 388 P.3d 632. "Montana's interpleader rule as set forth in M. R. Civ. P. 22(a) is identical to Fed. R. Civ. P. 22. It is therefore appropriate to look to federal jurisprudence interpreting the counterpart to Montana's rule."[5] *Associated Dermatology*, ¶ 15 (citing *Farmers Union Mut. Ins. Co. v. Bodell*, 2008 MT 363, ¶ 21, 346 Mont. 414, 197 P.3d 913).

¶16 No party in the proceedings below ever cited M. R. Civ. P. 22 or any caselaw regarding interpleader and the District Court did not analyze the propriety of the State proceeding in interpleader. Here, the State stands in the shoes of Ruiz, who the State asserts was acting in the course and scope of his employment when he got into the accident which killed both Haley and himself.[6] *See* § 2-9-101, MCA. Thomas, as both Personal

---

[5] The federal courts make a distinction between "statutory interpleader," authorized by 28 U.S.C. § 1335, and "rule interpleader," authorized by Fed. R. Civ. P. 22. "The distinctions between the two relate primarily to jurisdiction, the amount in controversy, citizenship of litigants, venue, and service of process. For the most part, these differences do not concern us." *Club Exch. Corp. v. Searing*, 567 P.2d 1353, 1356–57 (Kan. 1977).

[6] In both the proceedings below and on appeal, the State has not alleged or conceded that Ruiz was acting negligently. While the Dissent notes the State, for the first time in it Supplemental Brief, now concedes that "the Appellants' damages exceed the statutory limit under § 2-9-108, MCA," Dissent, ¶ 38, the State has never admitted liability to either the Estate or J.M.W., only that it "offered to pay $750,000 in exchange for a settlement of Respondent's claims against the State and Mr. Ruiz, not that it is liable for that amount" (emphasis in original) and that it would "challenge what happened" in the accident if not given a complete release. The State further explicitly noted that its settlement offer was "not an admission the State is liable for separate claims of the Estate of Haley Wilson and Thomas Wilson as conservator of JMW." While denying liability is not an absolute bar to interpleader, M. R. Civ. P. 22(a)(1)(B), the availability of the interpleader device still requires "that the claims as to which interpleader is sought be adverse to

9

Representative of Haley's Estate and as Conservator of J.M.W., apparently presented claims to the State flowing from the accident. After Thomas rejected the State's settlement offer, the State filed its petition for interpleader in the District Court. The State's petition is deficient in several respects and should have been dismissed by the District Court.

¶17    Under Montana's interpleader rule,

> Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:
>
> (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or
>
> (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

M. R. Civ. P. 22(a)(1). "The typical plaintiff in interpleader is an innocent stakeholder who is subject to competing claims. It is the general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader." *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988) (collecting cases). "A proceeding in the nature of interpleader is one in equity and is governed by equitable principles. A tort-feasor cannot obtain protection in an action in the nature of interpleader against the consequences of its own wrong."

---

each other [and] 'is not met when ... the "stakeholder" may be liable to both claimants.'" *Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995) (quoting 7 Wright, § 1705). When "in principle multiple recoveries would be justifiable in light of the multiplicity of duties owed" by the party seeking interpleader, the use of interpleader is properly denied. *Bradley*, 44 F.3d at 169.

10

*Holcomb v. Aetna Life Ins. Co.*, 228 F.2d 75, 81-82 (10th Cir. 1955) (internal citation omitted). The rule that bars a party from obtaining interpleader relief when it caused the underlying controversy "is meant to prevent a tortfeasor, facing claims from multiple parties, from using the interpleader device to cap its liability." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 263 n.4 (3d Cir. 2009). "Interpleader is a procedural device not intended to alter substantive rights. It is not the function of an interpleader rule to bestow upon the stakeholder immunity from liability for damages that are unrelated to the act of interpleading[.]" 44B Am. Jur. 2d Interpleader § 4 (2025).

¶18    First, the State is the alleged tortfeasor in this case, not a mere stakeholder. "The party seeking interpleader must do equity, not have caused the conflicting claims, and be free from blame in causing the controversy." 44B Am. Jur. 2d Interpleader § 7 (2025). A state employee, acting within the course and scope of his employment, was involved in an accident which killed Haley and left J.M.W. without a mother. The State, through its use of the interpleader device, is seeking to cap its liability regarding the claims presented by Haley's Estate and those of J.M.W. to the statutory cap for a single claim—$750,000. But of course, that cap is only relevant if (1) the claims presented by Haley's Estate and those presented by J.M.W. are in fact one "claim," and (2) the State has not waived the protection of the statutory cap by carrying insurance which exceeds the statutory cap.[7] *See Daniels*,

---

[7] At oral argument on the State's summary judgment motion, and after the State's motion to stay discovery had been granted—which Thomas opposed because he was seeking information regarding whether the State did in fact carry any other insurance policy on the vehicle driven by Ruiz—Thomas did argue the State not carrying liability insurance meant the rational basis of the statutory cap (a fear of "widespread cancellation of insurance and quadrupling of insurance rates") failed. Whether this was a concession that the State did in fact have no further insurance policy

11

¶ 20. In essence, the State is attempting to use interpleader to claim a limited "fund" of $750,000 by asserting the claims of Haley's Estate and those of J.M.W. are but a single claim, while simultaneously asserting those claims are "adverse" to one another such that it should be allowed to interplead the $750,000 and then be dismissed from the proceeding to let the Estate and J.M.W. fight it out amongst one another. The logical problems presented by this approach are readily apparent.

¶19 "A prerequisite for permitting interpleader is that two or more claimants must be 'adverse' to each other. This requirement is not met when one of the claims clearly is devoid of substance, or one of the claimants is under the control of the stakeholder or has dropped the claim and the fear of multiple litigation or liability is groundless, or the claims are not asserted against the same fund, or the 'stakeholder' may be liable to both claimants." 7 Wright, § 1705; *see also Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995). "[I]nterpleader is a joinder device whereby all of those who claim some interest in a particular fund (the stake) may be joined in the action, and may there assert and litigate their claims against the fund. Interpleader protects the stakeholder from multiple suits, and from determining at its peril, the validity and priority of disputed claims; it also protects the claimants by bringing them together in one action so that a fair and equitable distribution of the fund may be made." *Club Exch. Corp. v. Searing*, 567 P.2d 1353, 1358 (Kan. 1977). As a basic matter, the claims of Haley's Estate and those of J.M.W. are not "adverse" to one another. "The simplest illustration of adversity is when each claimant

under the facts of this case or simply counsel arguing the case that was left after the State's motion to stay discovery in this improper interpleader action was granted is a matter of interpretation.

asserts an exclusive right to the fund." 7 Wright, § 1705. The $750,000 "fund" could only exist if the claims of the Estate and of J.M.W. are one "claim," because if they were found to be separate claims but a single "occurrence," the "fund" would then be $1.5 million. Section 2-9-108(1), MCA. Haley's Estate and J.M.W. are not disputing ownership of a single $750,000 "fund," but asserting they each are entitled to their own distinct $750,000 "fund."[8] "Interpleader being a remedy solely for the protection of the stakeholder, it may not be used by the stakeholder as a weapon to defeat recovery from funds other than the one before the court. . . . If there are other bonds to which claims might be made, the benefit to plaintiff of limiting recovery to the single bond through skillful use of the interpleader is obvious." *Great Am. Ins. Co. v. Bank of Bellevue*, 366 F.2d 289, 294 (8th Cir. 1966). Furthermore, the State—without citing to the UDJA—sought a declaration that the claims of J.M.W. were derivative of the Estate's and therefore the "fund" was limited to $750,000 because there was only one "claim" presented in this case. In an interpleader action, "[a]s between plaintiff and the fund claimants, the only issue is the right to interplead, while, as between the claimants, the issue is, who is entitled to the fund and in what proportions. . . . The plaintiff under its pleadings stands impartial between claimants and cannot urge the claims of certain impleaded defendants against others." *Great Am. Ins. Co.*, 366 F.2d at 294. The State's pleadings did not stand impartial in this case, urging the claims of Haley's Estate—which it concedes exist following her death in the accident— over those of J.M.W.—which it claims do not. There is a basic logical incongruity of the

---

[8] In addition, both are also challenging the constitutionality of the tort cap such that neither believes there to be a limited $750,000 "fund" in any event.

13

State simultaneously arguing there are both two claims necessitating interpleader and there is only one claim which limits any potential recovery to $750,000. "Interpleader is designed to prevent multiple recoveries only where there are not multiple obligations; it is not intended to telescope multiple obligations into one." *Bradley*, 44 F.3d at 169. "The law will not allow an interpleader to avoid its liability on funds not pleaded and not before the court by the back door method here urged." *Great Am. Ins. Co.*, 366 F.2d at 294.

¶20    "Interpleader is a remedy involving two steps or stages." 7 Wright, § 1714. "The typical interpleader action proceeds in two distinct stages. During the first stage, the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants. During the second stage, the court determines the respective rights of the claimants to the interpleaded funds." *Hovis*, 553 F.3d at 262 (internal citations omitted).

¶21    During the first stage of an interpleader proceeding, a court must determine the right of the party invoking interpleader "to compel the claimants to litigate their claims to the stake in one proceeding." 7 Wright, § 1714. The District Court failed to address the propriety of the State's interpleader claim in this litigation. An interpleader action is properly dismissed on equitable grounds when "the motivation for an interpleader request is improper." 7 Wright, § 1709. It is readily apparent that the State's attempt to use interpleader in this case was improper and should have been dismissed by the District Court because the State is the alleged tortfeasor, i.e., responsible for Haley's death, and Haley's Estate and J.M.W. do not stand adverse to one another. "[A] stakeholder whose alleged tort caused the controversy is not absolved of liability by filing an interpleader action." *Lee*

14

*v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1014 (9th Cir. 2012). "Because interpleader is an equitable proceeding, it is subject to dismissal based on equitable doctrines[.]" *United States Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 208 (3d Cir. 1999). "Because the sole basis for equitable relief to the stakeholder is the danger of exposure to double liability or the vexation of conflicting claims, the stakeholder must have a real and reasonable fear of double liability or vexatious, conflicting claims to justify interpleader." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 741 F.2d 954, 957 (7th Cir. 1984) (internal citation omitted; collecting cases). This is not a proper interpleader action. The State is the alleged tortfeasor, not a mere stakeholder to a limited fund as an insurance company would be in a typical interpleader action, and is attempting to use the device to cap its liability. It admitted as much at oral argument by noting the State was only agreeing to interplead the $750,000 "for purposes of resolving this issue" and "[i]f the State is not going to get a release, it very well may challenge what happened in this accident." The State was not facing the danger of exposure to double liability or vexatious, conflicting claims in this case. Haley's Estate and J.M.W. are not parties in conflict with one another seeking the same limited pot of money as would be the case in a typical interpleader action. They are two parties seeking to hold the State liable for their asserted individual claims.[9]

---

[9] The impropriety of allowing the State to proceed in interpleader is even more apparent when one considers the second stage of interpleader, which "involves the determination of the respective rights of the claimants to the stake," and at which time "each claimant occupies an adversary position to the others and must proceed accordingly." 7 Wright, § 1714. If the fund was indeed limited to $750,000 following the first stage of interpleader, it would necessarily require a judicial determination that there had been only a single "claim" presented such that J.M.W.'s NIED claim would no longer exist, which is exactly what the State argued in its petition and motion for summary judgment. To determine the fund's limit necessarily requires a determination of the merits of the claims presented, but "a determination of the respective merits of the adverse claims

Rather than being forced to defend against an improper interpleader, they should be allowed to file their own lawsuits and develop the necessary record regarding both liability and damages. While the Dissent asserts allowing the State to proceed in interpleader would promote judicial efficiency, Dissent, ¶ 52, "interests of party convenience and judicial economy that would be served by trial of all claims in a single proceeding 'cannot compel the otherwise inappropriate joinder of claims in interpleader.'" *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 509 (9th Cir. 1978) (quoting *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1142 (8th Cir. 1976)). The District Court erred by allowing the State to proceed in interpleader.

¶22   *2. Should this Court issue an opinion regarding the constitutionality of the statutory damages cap imposed by § 2-9-108, MCA, under the procedural posture of this case?*

¶23   The State's Petition in Interpleader and Complaint for Declaratory Relief did not mention the UDJA. Its prayer for relief in that document also did not request a declaration that the tort cap found in § 2-9-108(1), MCA, was constitutional. Though not in its prayer for relief, the petition did assert that the "Estate's and the Minor Child's claims are one

---

is inappropriate at the initial stage[.]" 7 Wright, § 1704. This is exactly what the State sought through its use of interpleader to cap its potential liability at $750,000, arguing that "Respondent's purported claims are but one claim" and that J.M.W. "cannot have a separate claim for negligent infliction of emotional distress because that claim is subsumed by the wrongful death claim." In an interpleader action, the "plaintiff under its pleadings stands impartial between claimants and cannot urge the claims of certain impleaded defendants against others." *Great Am. Ins. Co.*, 366 F.2d at 294. Moreover, it is not proper to reach the merits in the first stage because "[i]ssues relating to the merits of the action should be deferred until the so-called 'second stage' of interpleader." 7 Wright, § 1704. Further, the State through its use of interpleader is seeking the bizarre judicial determination that Thomas, as Personal Representative of Haley's Estate and as Conservator of J.M.W., must litigate against himself how much the Estate and J.M.W. are each entitled to out of the fund while simultaneously seeking a judicial determination that J.M.W.'s claim is derivative of the Estate's and cannot proceed at all.

16

claim under Mont. Code Ann. § 2-9-101(1)," and "[g]iven the State's position" that Thomas's claims on behalf of the Estate and J.M.W. are one claim the State "is not responsible for an amount in excess of $750,000" pursuant to § 2-9-108(1), MCA. In essence, the claim for declaratory relief put forth by the State in its improper interpleader action sought a declaratory judgment that the Estate's claim and J.M.W.'s claim were a single claim and therefore subject to the $750,000 cap imposed by § 2-9-108(1), MCA.

¶24 On appeal, following our request for supplemental briefing which asked whether it was "appropriate for this Court to issue an opinion in an interpleader action on the constitutionality of the damages cap imposed by § 2-9-108, MCA, when there has been no plaintiff's lawsuit filed and no determination of the State's liability for damages exceeding the statutory limit," both parties argue that this Court should reach the constitutional issue regarding the statutory tort cap as presented in the District Court's summary judgment order. We disagree.

¶25 In the proceedings below, the District Court essentially granted declaratory judgment in favor of the State on three separate grounds: (1) that J.M.W.'s negligent infliction of emotional distress claim was derivative of the wrongful death claims of Haley's Estate; (2) that the tort cap was facially constitutional; and (3) that the tort cap was constitutional as applied to the claims as presented in this case. We have already discussed how the State was improperly allowed to proceed in interpleader. We must now determine whether a justiciable controversy regarding the constitutionality of the statutory tort cap remains following the correction of that mistake.

17

¶26 Thomas has not filed a lawsuit against the State in either his capacity as Personal Representative of Haley's Estate or as Conservator of J.M.W. Because the State was wrongly allowed to proceed in interpleader, he has been forced to both defend his claims in a truncated proceeding in which the State did not respond to discovery and appeal a summary judgment order which determined J.M.W.'s NIED claim did not exist and that the statutory damages cap was constitutional both on its face and as applied to Haley's Estate. While Thomas would like the Court to unwind both the interpleader action and the determination that J.M.W.'s claim was derivative, he nonetheless asks this Court to reach the constitutionality of the tort cap, regardless of the fact that there has been no verdict or award of damages in excess of the statutory cap. And though the State argues it was correct to proceed in interpleader, it similarly wishes this Court to pass judgment on the constitutionality of the tort cap. "Although the Uniform Declaratory Judgment Act (UDJA) is to be liberally construed and administered, it does not license litigants to fish in judicial ponds for legal advice." *Arnone*, ¶ 10 (internal citations and quotation marks omitted). While it is understandable that both parties want a resolution regarding the constitutionality of the cap, this Court is limited to resolving justiciable controversies and will not issue advisory opinions. *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 9, 355 Mont. 142, 226 P.3d 567.

¶27 "The central concepts of justiciability have been elaborated into more specific categories or doctrines--namely, advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions--each of which is governed by its own set of substantive rules." *Greater Missoula Area Fed'n of Early*

18

*Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d 881 (collecting cases). "The doctrine of ripeness 'requires an actual, present controversy, and therefore a court will not act when the legal issue raised is only hypothetical or the existence of a controversy merely speculative.' The basic rationale behind the ripeness doctrine is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]'" *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 19, 333 Mont. 331, 142 P.3d 864 (quoting *Mont. Power Co. v. Pub. Serv. Comm'n*, 2001 MT 102, ¶ 32, 305 Mont. 260, 26 P.3d 91) (internal citation omitted). "Ripeness can be viewed as one of the time dimensions of standing because it is called into question when a party is complaining of a threat of future injury. Ripeness asks whether an injury that has not yet happened is sufficiently likely to happen or, instead, is too contingent or remote to support present adjudication." *Mont. Immigrant Just. All. v. Bullock*, 2016 MT 104, ¶ 20, 383 Mont. 318, 371 P.3d 430 (internal citations and quotation marks omitted). "Ripeness is predicated on the central perception that courts should not render decisions absent a genuine need to resolve a real dispute; hence, cases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Reichert v. State*, 2012 MT 111, ¶ 54, 365 Mont. 92, 278 P.3d 455; *see also Clark v. Cain*, 479 S.W.3d 830, 831-32 (Tenn. 2015) ("The central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all.").

¶28     Here, the existence of a controversy regarding the statutory cap on damages is speculative or hypothetical[10] as there has been no verdict or award of damages in excess of the statutory cap—the matter is not ripe. *Havre Daily News*, ¶ 19.   While Thomas apparently presented claims to the Department of Administration—again, no actual record of this exists from the proceedings below—he has not yet filed a suit against the State, only responded to the State's improper interpleader action.  No discovery has yet occurred as the State refused to respond to discovery pending the adjudication of its summary judgment motion and Thomas, as noted by the District Court, did not file a Rule 56(f) motion in response to the State's motion.  In addition, the District Court granted the State's motion to stay discovery pending resolution of the motion for summary judgment.   The information sought by Thomas in discovery, which the District Court determined was "unrelated" to the State's summary judgment motion certainly could be relevant to determining whether the statutory caps are even applicable in this case as Thomas was seeking information related to further insurance coverage the State may have had on Ruiz's vehicle. *See Daniels*, ¶ 20 (holding an insurer may not claim the benefits of the statutory damages cap if it agrees to coverage limit amounts in excess of the limitation provided by the statute).  The State has asserted it is self-insured for the accident, but never responded to Thomas's discovery request regarding whether any other insurance coverage existed. The factual basis for the hypothetical applicability of the statutory damages cap should not be limited by an apparent mistake of counsel to oppose a motion to stay discovery by

---

[10] Although the parties may reasonably believe a verdict in excess of the statutory cap could occur, such is a contingent future event that may or may not occur as they anticipate.

claiming he needs to find out if the State has additional insurance while not simultaneously filing a Rule 56(f) motion to oppose summary judgment on those same grounds, particularly when those motions were made in an improper interpleader proceeding which he should not have had to defend in the first place.

¶29 Furthermore, Thomas has not filed his own lawsuit yet. He has made no specific claims which have been adjudicated at the district court level. No jury has made a determination that Haley's Estate and/or J.M.W. have proven damages in excess of the cap. Nor has J.M.W. had the opportunity to plead her own independent NIED claim or demonstrate her claim is separate from the Estate's and constitutes an independent and direct injury (beyond responding to the State's summary judgment motion in the improperly-allowed interpleader action) or associated damages.[11] The State has not

---

[11] In its summary judgment order, the District Court determined J.M.W.'s negligent infliction of emotional distress claim was derivative of the claims of Haley's Estate and therefore only one "claim" had been presented for the purposes of the limitation of liability found in §§ 2-9-101 and -108, MCA. The tort cap sets forth that the "state . . . is not liable in tort action" for damages in excess of $750,000 for each claim and $1.5 million for each occurrence. Section 2-9-108(1), MCA. But J.M.W. had not yet filed a tort action setting forth her actual cause of action or engaged in discovery. Nor had Haley's Estate filed a tort action setting forth its purported causes of action. Essentially, due to the State wrongly being allowed to proceed in interpleader, both J.M.W. and the Estate were forced to litigate their claims backwards below—responding to the State's categorization of their claims rather than setting forth their own causes of action. The District Court then proceeded to determine J.M.W.'s claim, which had not yet been pled, was derivative and subsumed into the claims of the Estate, which had also not yet been pled. The court's determination was in error because it was not made upon an actual cause of action pled, *see* M. R. Civ. P. 8(a), or upon a developed discovery record, and was made in an improper interpleader proceeding. What's more, the State also argued the Estate's asserted wrongful death claim in fact belonged to J.M.W., as an heir of the Estate and not to the Estate itself, in the proceedings below. So in addition to seeking a determination that J.M.W.'s NIED claim was derivative of the Estate's claim and did not actually exist, the State appeared to seek the District Court reallocate one of the Estate's claims from the Estate to J.M.W., when, again, neither the Estate nor J.M.W. had filed a complaint in the District Court setting forth their specific causes of action. This further demonstrates the need for courts to address real controversies and avoid making determinations of the rights and responsibilities of parties when those parties have not actually pled their own claims.

21

confessed Ruiz was acting negligently and has made clear that it sought interpleader to get a release of liability and without such a release, it would "challenge what happened" in the accident. Accordingly, there may be relevant issues of comparative negligence related to the accident which could also have an effect on whether the statutory damages cap is even triggered. "[T]he constitutional requirement of a 'case or controversy' contemplates real controversies and not abstract differences of opinion[.]" *Greater Missoula Area Fed'n of Early Childhood Educators*, ¶ 23. "[E]ven when jurisdiction exists it should not be exercised unless the case 'tenders the underlying constitutional issues in clean-cut and concrete form.'" *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588, 92 S. Ct. 1716, 1719 (1972) (quoting *Rescue Army v. Mun. Ct. of L.A.*, 331 U.S. 549, 584, 67 S. Ct. 1409, 1427 (1947)). This improper interpleader case has not presented the constitutional issues related to the statutory damages cap in "clean-cut and concrete form." *Socialist Labor Party*, 406 U.S. at 588, 92 S. Ct. at 1719. Thomas asks the Court to reach the constitutionality of the damages cap based on the District Court's summary judgment order, but we have already explained that order was based on legal error and must be reversed. The State, which has never admitted Ruiz was acting negligently and has notified the District Court it would challenge what happened in the accident if not granted a release, asserts a justiciable controversy exists because the *claims* submitted by Haley's Estate and J.M.W. are real and it has "been refused a release of claims despite its willingness to pay the maximum amount of its potential liability under the Tort Claims Act." In essence, the parties are asking this Court to intervene in their settlement negotiations, which we decline to do. The Dissent similarly claims that the unanswered question regarding the State's

22

liability limit is "preventing the parties from reaching a settlement." Dissent, ¶ 53. But the State has not admitted Ruiz was acting negligently, has not admitted it is liable to either the Estate or to J.M.W., neither the Estate nor J.M.W. have actually filed a lawsuit and set forth their causes of action, and there has been no verdict or determination of the State's liability to the Estate, J.M.W., or both at or above the statutory cap. It is the function of this Court to determine "real controversies," *Greater Missoula Area Fed'n of Early Childhood Educators*, ¶ 23, not to intervene in the State's failed settlement negotiations regarding lawsuits not yet filed.

¶30 In addition to being unripe, further considerations counsel against reaching the constitutional merits of the statutory cap in this appeal. For instance, "courts should avoid constitutional issues whenever possible." *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 62, 338 Mont. 259, 165 P.3d 1079. It is possible to avoid the constitutional issue raised here because it is both not ripe and was brought in an improper proceeding. We also consistently decline to issue advisory opinions. *Plan Helena*, ¶ 9.

¶31 Ultimately, we determine the District Court's summary judgment order should be vacated in its entirety and the interpleader action dismissed. Accordingly, any "discussion of the damages cap would be premature" based on the facts of the case as presented here and we will not issue an advisory opinion about the issue. *S.W. v. State*, 2024 MT 55, ¶ 64, 415 Mont. 437, 578 P.3d 551. Under the procedural posture of this case, where the State was wrongly allowed to proceed in interpleader and informed the court it would contest liability should it not receive a release in that improper proceeding, we decline to determine the constitutionality of the tort cap as a full record has not been developed below. It is

23

premature to determine the constitutionality of the statutory damages cap where the statutory cap would have no relevance in the case unless and until the plaintiffs obtained a verdict in excess of the cap. Thus, until Thomas files a lawsuit on behalf of Haley's Estate and/or J.M.W. and the matter proceeds to a verdict in excess of the statutory cap, there is no need for this Court to address the constitutionality of the cap.

## CONCLUSION

¶32 The District Court erred when it allowed the State to proceed in interpleader and issued an improper advisory opinion regarding the constitutionality of the tort cap. We reverse the court's grant of summary judgment in favor of the State and remand with instructions to enter an order dismissing the State's petition.

¶33 Reversed and remanded.

/S/ INGRID GUSTAFSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ KATHERINE M. BIDEGARAY
/S/ JIM RICE

Justice Beth Baker, dissenting.

¶34 The State's declaratory judgment petition presented a justiciable controversy regarding its liability limit under § 2-9-108, MCA. The District Court ruled that Wilson may not recover more than $750,000 to satisfy the Estate's and J.M.W.'s claims, which demonstrates why the case presented claims adverse to one another within the ambit of the

24

interpleader rule. Permitting the State to proceed in that fashion is not prohibited by M. R. Civ. P. 22 but is an equitable and efficient mechanism to resolve these competing claims. I would conclude that the District Court did not err by considering the State's declaratory judgment action and allowing it to proceed in interpleader. Accordingly, I would consider the merits of the claims the parties brought to this Court and briefed on appeal.

¶35 Section 2-9-108(1), MCA, limits the State's liability for tort actions arising from the acts or omissions of state employees to "$750,000 for each claim and $1.5 million for each occurrence." For purposes of determining § 2-9-108, MCA's liability limit, "all claims that arise or derive from personal injury to or death of a single person, . . . regardless of the number of persons or entities claiming damages, are considered one claim." The State alleged in its petition for declaratory judgment, and Wilson admitted, that the State offered Wilson $750,000 to settle the Estate's wrongful death and survivorship claims and J.M.W.'s negligent infliction of emotional distress claim. Wilson refused, arguing that the $1.5 million "per occurrence" cap applied and requesting that the State pay $750,000 without a release from further liability. The State sought a declaration that because the Estate's and J.M.W.'s claims arose from Haley's death, they were considered one "claim" under § 2-9-101(1), MCA, and therefore its liability for the accident could not exceed $750,000 regardless of the claimants' actual damages. The State requested an order allowing it to interplead $750,000 from its self-insurance fund and releasing it from further liability. Wilson defended the State's petition on the ground that the State's liability exceeded $1.5 million, that the State was not entitled to a release, and that § 2-9-108,

25

MCA's damages cap was unconstitutional. The parties filed cross-motions for summary judgment and presented oral argument in the declaratory judgment action addressing these issues. The District Court ruled in the State's favor and granted its request to interplead $750,000.

¶36 Under the UDJA, "Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." Section 27-8-202, MCA. The purpose of the UDJA is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Gardiner-Park Cnty. Water & Sewer Dist. v. Knight*, 2024 MT 121, ¶ 28, 417 Mont. 1, 549 P.3d 1151 (quoting § 27-8-102, MCA). Despite the UDJA's liberal construction, the plaintiff still must prove that a justiciable "case or controversy" exists. *Plan Helena, Inc.*, ¶ 11 ("A court lacks jurisdiction to decide moot issues or to give advisory opinions insofar as an actual 'case or controversy' does not exist."). "A district court may refuse to enter a declaratory judgment if it would not terminate the uncertainty or controversy giving rise to the proceedings." *Donaldson v. State*, 2012 MT 288, ¶ 9, 367 Mont. 228, 292 P.3d 364 (citing § 27-8-206, MCA; *Miller v. State Farm Mut. Auto. Ins. Co.*, 2007 MT 85, ¶ 7, 337 Mont. 67, 155 P.3d 1278). A controversy is justiciable if the asserting party "has an actual, non-theoretical interest" in the issue and a judgment will "effectively operate and provide meaningful relief." *City of Missoula v. Fox*, 2019 MT 250, ¶ 11, 397 Mont. 388, 450 P.3d 898 (internal quotations omitted; citation omitted).

26

¶37 The State argued that Wilson's claims on behalf of the Estate and J.M.W. were considered one claim under § 2-9-101(1), MCA, and therefore the State could not be liable for more than $750,000 in damages. Although the Court criticizes the State for failing to include a statutory reference to the UDJA in its complaint, Opinion, ¶ 19, the petition specifically requested "that the [c]ourt declare that the State and Mr. Ruiz are not liable to Respondent in excess of $750,000." The State's request for a ruling that declared the parties' rights under § 2-9-108, MCA, and settled uncertainty regarding its liability limit was squarely within the UDJA's parameters.

¶38 To demonstrate that a controversy existed, the State pleaded the above facts regarding its failed settlement attempt and asserted:

> Given the State's position that Respondent's claims on behalf of the Estate and Minor Child are one claim under Mont. Code Ann. § § [sic] 2-9-101(1), that the State is not responsible for an amount in excess of $750,000 pursuant to Mont. Code Ann. § 2-9-108(1), and that the State is entitled to a settlement and release for $750,000.00, and Respondent's request that the State pay $750,000.00 to him without a release of settlement and demand for $1,500,000.00, a controversy exists between the State and Respondent.

By declining the State's settlement offer, Wilson demonstrated his intent to litigate the Estate's and J.M.W.'s claims as an "occurrence" within the Tort Claims Act's $1.5 million limitation. The State concedes in its briefing before this Court that "the Appellants' damages exceed the statutory limit under § 2-9-108, MCA," and that appears never to have been in dispute. The State argues that because this limit applies, Wilson cannot recover more than $750,000 regardless of a jury's damages award. The court's judgment effectively and meaningfully resolved this dispute by relieving the State from further liability, permitting Wilson to recover the maximum amount allowed by law and saving

27

the parties from unnecessary litigation. The State therefore presented appropriate, justiciable claims under the UDJA. Wilson properly appealed the District Court's ruling to secure a final interpretation of the statute from this Court. We should hear the parties' claims and resolve them.

¶39 With a proper case for declaratory relief before it, the District Court determined to allow the State to proceed in interpleader. M. R. Civ. P. 22(a)(1) provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." The Rule allows interpleader even if the claims "lack a common origin or are adverse and independent rather than identical" or if "the plaintiff denies liability in whole or in part to any or all of the claimants." M. R. Civ. P. 22(a)(1). "[R]ule interpleader is an equitable procedure designed to protect against double liability and the expense of defending twice." *Associated Dermatology & Skin Cancer Clinic*, ¶ 16.

¶40 A stakeholder may pursue interpleader only if two or more claimants assert adverse claims to the stake. 7 Wright, § 1705. Although the "simplest illustration of adversity is when each claimant asserts an exclusive right to the fund," the competing claims need not be mutually exclusive. 7 Wright, § 1705. The adversity requirement is satisfied when claims are at least partially inconsistent with one another. 12B Charles Alan Wright et al., *Federal Practice and Procedure: Civil Rules Quick Reference Guide*, 498 (2025). Interpleader may be invoked to equitably divide a limited fund that cannot satisfy all the claims presented against it—for example, when insurers face multiple tort claims for damages that exceed a policy's liability limits. 7 Wright, § 1705; *see, e.g., State Farm Fire*

28

*& Cas. Co. v. Tashire*, 386 U.S. 523, 87 S. Ct. 1199 (1967).  In these situations, interpleader protects claimants by avoiding a "race to judgment" where the first claimant to obtain a judgment or negotiate settlement "might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims." *Tashire*, 386 U.S. at 533, 87 S. Ct. at 1205.  It also protects the stakeholder from "being obliged to determine at his peril which claimant has the better claim," 7 Wright, § 1702, and "assur[es] a fair and comprehensive distribution of the proceeds in a single proceeding," which "more than justifies the application of the remedy," 7 Wright, § 1705.

¶41    The Court incorrectly construes the State's theory to be that, under §§ 2-9-101(1) and -108(1), MCA, J.M.W.'s claim no longer exists and therefore the Estate's and J.M.W.'s claims are not adverse.  Opinion, ¶ 21 n. 9.  But the definition of "claim" is relevant only for determining § 2-9-108(1), MCA's liability limit; it does not erase J.M.W.'s cause of action.  Further, the statute expressly contemplates situations where multiple claimants seek damages arising from the death of a single person, but the $750,000 "per claim" limit applies.  Section 2-9-101(1), MCA ("[A]ll claims that arise or derive from personal injury to or death of a single person, . . . *regardless of the number of persons or entities claiming damages*, are considered one claim." (emphasis added)).  The State's theory is not that J.M.W.'s cause of action is extinguished; instead, it contends that the statute limits the Estate's and J.M.W.'s collective recovery to a single, $750,000 fund that must be divided between them to satisfy both claims.  In other words, the State contends, because the

29

Estate's and J.M.W.'s causes of action are considered one claim under § 2-9-108(1), MCA, its liability to both claimants cannot exceed $750,000.[1]

¶42 The District Court understood this distinction, explaining that the parties "agree[d] JMW has a 'claim' for negligent infliction of emotional distress. The parties disagree, however, whether JMW's claim 'arises' or 'derives' from the death of her mother." The court concluded that because J.M.W.'s claim arose from Haley's death, she did not have an independent claim such that the "per occurrence" limit would apply and therefore that "[h]er claim for negligent infliction of emotional distress along with the claims for wrongful death and survivorship are subject to the 'per claim' limits of . . . § 2-9-108[, MCA]." The Court incorrectly concludes that the Estate and J.M.W. are "not parties in conflict with one another seeking the same limited pot of money." Opinion, ¶ 21. If the $750,000 "per claim" damages cap applies, the two claimants are seeking the same pot of money that, admittedly, is insufficient to satisfy their full damages.

¶43 The Court also remarks that the Estate and J.M.W. should "be allowed to file their own lawsuits and develop the necessary record regarding both liability and damages." Opinion, ¶ 21. But this remark underscores the problem that Rule 22 seeks to avoid. If the District Court is correct in its declaratory ruling, § 2-9-108(1), MCA, limits the claimants'

---

[1] The Court casts doubt on the State's theory by remarking that this cap "is only relevant if . . . the State has not waived the protection of the statutory cap by carrying insurance which exceeds the statutory cap." Opinion, ¶ 18. The State asserted in its petition that it is self-insured for the accident. Wilson, "upon information and belief," admitted this fact in his answer. In its summary judgment reply brief, the State expressly stated that "the State is self-insured for this accident . . . . It has no insurance policy for this accident." Wilson conceded this point at the summary judgment hearing, remarking that the State "admitted that they're self-insured. They don't have insurance policies." Wilson relied on the fact that the State "doesn't carry liability insurance" in support of his argument that the statutory cap was unconstitutional.

collective recovery to $750,000. That fund may be significantly diminished or entirely depleted after the first claimant receives a judgment, thereby depriving the other of the opportunity to recover. *Tashire*, 386 U.S. at 533, 87 S. Ct. at 1205. Absent proceeding in interpleader, the State potentially would have to defend multiple suits or unilaterally determine how much each claim is worth. 7 Wright, § 1702. Because the Estate and J.M.W. present competing claims to a limited fund, they satisfy Rule 22's adversity requirement.

¶44 Next, the Court concludes that equitable considerations render interpleader improper because the State is the alleged tortfeasor. Opinion, ¶ 21. But this is an incomplete characterization of the State's role when sued for the torts of its employees and ignores that interpleader invokes discretionary considerations. Interpleader actions are equitable in nature; therefore, courts have discretion to dismiss proceedings on equitable grounds. *Prudential Ins. Co. of Am.*, 553 F.3d at 263. Courts may exercise this discretion when the stakeholder has been guilty of laches, has contributed to the development of the adverse claims, "or should be estopped from seeking interpleader relief for some other reason." 7 Wright, § 1709. Most commonly, however, courts weigh equity against judicial efficiency interests and permit interpleader but deny the stakeholder reimbursement for its fees and costs. 7 Wright, § 1709; *see, e.g.*, *William Penn Life Ins. Co. of N.Y. v. Viscuso*, 569 F. Supp. 2d 355, 363 (S.D.N.Y. 2008) (concluding that the stakeholder's mere negligence does not preclude interpleader, "even if the controversy has resulted quite directly and foreseeably from that negligence").

¶45 Courts are less lenient when the stakeholder's motivation for requesting interpleader is improper. 7 Wright, § 1709; *see also William Penn Life Ins. Co. of N.Y.*, 569 F. Supp. 2d at 363 (explaining that the stakeholder is barred from pursing interpleader if it engages in "unconscionable, bad-faith or willfully wrongful conduct"); *Lee,* 688 F.3d at 1012 ("[M]any courts have held that those who have acted in bad faith to create a controversy over the stake may not claim the protection of interpleader."). Tortfeasors may not, for example, use interpleader as a device to cap their own liability. *Prudential Ins. Co. of Am*., 553 F.3d at 263 n. 4; *Farmers Irrigating Ditch & Reservoir Co*., 845 F.2d at 232; *see also Lee,* 688 F.3d at 1014.

¶46 The State is not, as the Court contends, attempting to improperly limit its liability by invoking Rule 22. Opinion, ¶ 21. First, the Court faults the State for remarking that it would contest liability if it was not released from liability after depositing the funds. Opinion, ¶ 21. But M. R. Civ. P. 22(a)(1)(B) expressly permits interpleader when the moving party "denies liability in whole or in part to any or all of the claimants." The State was not required to admit liability; instead, it needed only to have a "good faith belief that there are or may be colorable competing claims to the stake." *Michelman v. Lincoln Nat'l Life Ins. Co*., 685 F.3d 887, 894 (9th Cir. 2012); *see also* 7 Wright, § 1704 (explaining that it is immaterial whether the stakeholder believes that the adverse claims are meritorious; rather, the question is "whether the stakeholder legitimately fears multiple vexation directed against a single fund"). The State's good faith belief that the competing claims are colorable is demonstrated by its attempt to settle for its entire liability limit and its

32

concession that "the Appellants' damages exceed the statutory limit under § 2-9-108, MCA." This is all that M. R. Civ. P. 22 requires.

¶47 This case is distinguishable from others where the plaintiff's tortfeasor status rendered interpleader improper. For example, in *Farmers Irrigating Ditch & Reservoir Company*, Farmers owned a reservoir that failed, causing death and substantial property damage. *Farmers Irrigating Ditch & Reservoir Co*., 845 F.2d at 230. The trial court permitted Farmers' insurers to interplead their policy limits. *Farmers Irrigating Ditch & Reservoir Co*., 845 F.2d at 231. Farmers also proceeded in interpleader, tendering just over $2,500 of its own assets to the court while it admitted liability for damages in excess of $8,500,000. *Farmers Irrigating Ditch & Reservoir Co.,* 845 F.2d at 231. The Tenth Circuit held that Farmers could not pursue interpleader and "tender into the registry of the court a minimal sum . . . and ask that such sum be prorated among the numerous claimants and that it then be discharged from any further liability for damages arising out of the flood." *Farmers Irrigating Ditch & Reservoir Co*., 845 F.2d at 232.

¶48 An interpleader plaintiff also may not avoid counterclaims for damages that exceed the stake when the plaintiff is independently liable on some other basis. *Lee,* 688 F.3d at 1014 ("[A] stakeholder whose alleged tort caused the controversy is not absolved of liability by filing an interpleader action."). In *Lee*, a Ninth Circuit case cited by the Court, beneficiaries of a life insurance policy issued by the insurer disputed who was entitled to the $800,000 benefit. *Lee*, 688 F.3d at 1007. The insurer caused the policy holder's family members to improperly execute various policy change forms, which gave rise to the beneficiaries' dispute. *Lee*, 688 F.3d at 1007. The insurer filed an interpleader action and

33

deposited the $800,000 stake with the court. *Lee*, 688 F.3d at 1007-08. The beneficiaries counterclaimed for negligence arising from the company's errors in executing the change forms. *Lee*, 688 F.3d at 1008.

¶49 The court considered whether interpleader "shield[s] a negligent stakeholder from tort liability for its creation of a conflict over entitlement to the interpleaded funds" and ruled that it does not. *Lee*, 688 F.3d at 1006. The court noted that the beneficiaries did not contend that interpleader should have been unavailable; instead, they sought damages for the defendant's negligent conduct in addition to and independent from the stake. *Lee*, 688 F.3d at 1012. The court explained that "[t]he stake marks the outer limits of the stakeholder's potential liability where the respective claimants' entitlement to the stake is the sole contested issue; however, where the stakeholder may be independently liable to one or more claimants, interpleader does not shield the stakeholder from tort liability, nor from liability in excess of the stake." *Lee*, 688 F.3d at 1011; *see also Primerica Life Ins. Co. v. Woodall*, 975 F.3d 697, 700 (8th Cir. 2020) ("[I]f the party asserting the right to interpleader . . . has acted unfairly to create the underlying conflict necessitating interpleader relief, then that party may not use the interpleader procedure as a shield against counterclaims asserting that the interpleader stakeholder is at fault in creating the subject of the dispute."). *Lee* demonstrates that stakeholders who may be independently liable to claimants on some alternative basis—for example, an insurer's bad faith or negligent handling of a claim—may not be absolved from additional liability by interpleading the disputed funds.

34

¶50 The present case does not involve the same equitable considerations present in *Farmers Irrigating Ditch & Reservoir Company* and *Lee* because it is the statute, not the State's use of interpleader, that caps its liability. Unlike *Farmers*, where the court reasoned that interpleader was improper because the plaintiff was attempting to "cap" its liability by interpleading a paltry sum of its assets, the State sought to interplead its self-insurance funds in an amount that would satisfy its maximum potential liability under § 2-9-108, MCA. This case is unlike *Lee* because the Estate's and J.M.W.'s claims arise from Ruiz's negligence, not from any independent acts or omissions by the State that would entitle them to damages not subject to the statutory cap. *Lee*, 688 F.3d at 1009 (explaining that "interpleader protection generally does not extend to counterclaims that are not claims to the interpleaded funds"). The State was thus not using interpleader as a device to minimize its liability; if its statutory argument prevailed, the claimants could not recover more than the State's $750,000 liability limit even if the court denied its interpleader request. Plainly, the statutory damages cap—not the State's use of interpleader as a remedy—would impose the applicable ceiling on the State's liability.

¶51 Other jurisdictions that have statutory caps on governmental liability have entertained the government's actions to interplead the full limit when sued for an employee's negligence. *See, e.g.*, *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 958 (2001) (state interpleaded maximum $1,000,000 statutory liability after public bus collision that injured multiple passengers); *Larimore Pub. Sch. Dist. No. 44 v. Aamodt*, 2018 ND 71, ¶¶ 3-4, 908 N.W.2d 442 (after school bus collided with train and injured multiple children, the school district and its government self-insurance pool

35

initiated an interpleader action and deposited $500,000—the state's aggregate statutory liability limit—with the court). These cases demonstrate that state governments may avail themselves of interpleader when the state is the alleged tortfeasor by operation of law and its liability is limited by statute. The present case is no different. Although the State is liable for Ruiz's conduct by operation of §§ 2-9-102 and -305, MCA, there is no evidence demonstrating that the State itself acted with unclean hands or negligently caused the accident such that interpleader would be inequitable.

¶52 Far from being improper, the State's action sought to expeditiously resolve the claims without compelling time-consuming and expensive litigation that it believed could lead to no more than the $750,000 it offered. Permitting the State to pursue interpleader promotes judicial efficiency and protects the parties by "assuring a fair and comprehensive distribution of the proceeds in a single proceeding." 7 Wright, § 1705. Wilson's challenge to the constitutionality of that statutory limit is justiciable because, if the statute survives scrutiny, the Estate has no further claim to litigate.

¶53 For these reasons, I would conclude that the District Court did not err by ruling on the State's declaratory judgment action and allowing it to proceed in interpleader. The parties disputed whether the State's liability limit was $750,000 or $1.5 million, preventing the parties from reaching a settlement. An actual controversy existed when the State petitioned the court to declare its rights under § 2-9-108(1), MCA, and a declaratory judgment action was appropriate to resolve this issue. Because the Estate and J.M.W. presented competing claims to a limited fund, the State's status as the defending tortfeasor is not a per se bar to interpleader—particularly when it is self-insured—and Wilson has not

36

alleged that the State has unclean hands, I would conclude that this case is properly before this Court and would address the merits of the parties' claims. At bare minimum, the Court should permit the declaratory judgment appeal to go forward so the parties know the damage limit under which they are operating.

/S/ BETH BAKER

Chief Justice Cory J. Swanson joins the Dissent of Justice Beth Baker.

/S/ CORY J. SWANSON